UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CHOICE HOTELS INTERNATIONAL, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-00023 |
| | § | |
| VINODBHAI PATEL, *et al*, | § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Choice Hotels International, Inc. brings this action against two former franchisees—Defendants Mrs. Ilaben and Mr. Vinodbhai Patel—for continuing to use Comfort Inn trademarks after the parties' franchise agreement terminated on April 8, 2009. Choice Hotels now argues that it is entitled to summary judgment, both on liability and for treble damages, because the Patels waited over two years after the termination of the franchise agreement to remove the Comfort Inn marks from signs outside the hotel, the hotel's credit card receipts, and the hotel's Wi-Fi connection service.

Having reviewed the parties' briefs and submissions and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Choice Hotel's motion. Summary judgment on Mr. Patel's liability is warranted: the evidence shows that there is no genuine dispute that Choice Hotels had a legally protected interest in

the marks; that Mr. Patel used the marks in commerce without the consent of Choice Hotels; and that such usage was likely to cause confusion. However, fact issues still remain about Mrs. Patel's involvement in the infringement and whether the Patels' conduct warrants the monetary damages that Choice Hotels seeks.

## I.   BACKGROUND

Choice Hotels is a hotel franchisor, known for its line of roadside value hotels, including Comfort Inn, Econo Lodge, Cambria Suites, and Rodeway Inn.



Figure 1: Choice Hotels' brands as depicted on its website. *Choice Hotels: Our Brands*, http://www.choicehotels.com/en/about-choice/ourbrands (last visited April 10, 2013).

Its formal relationship with the Patels began on April 2, 1993, when the parties entered into a franchise agreement. In broad terms, the agreement permitted the Patels to operate a Comfort Inn franchise at 1906 Houston Highway, Victoria, Texas 77901, in exchange for royalties and other fees. *See* Docket Entry No. 5-3 at 2–19. The agreement licensed Comfort family marks to the Patels, but allowed Choice Hotels to revoke those licenses upon termination of the agreement. *Id.* at 5, 9. The agreement provided a number of reasons for which Choice Hotels could terminate the franchise, including an option to terminate without cause and as a matter of right on the fifteenth anniversary of the "commencement date." *Id.* at 3.

Choice Hotels chose to exercise that option and sent a letter to the Patels on January 16, 2008 notifying them "of Choice's election to terminate on the 15th anniversary of the Commencement Date, the COMFORT INN franchise agreement and addendum . . . on **April 8, 2009**."  Docket Entry No. 29-12 at 13 (emphasis in original).  The termination notice also stated that the Patels' "use of Choice's proprietary marks, including, but not limited to, the trade name and service mark COMFORT INN®, must cease no later than **April 8, 2009**" in order not to infringe Choice's trademarks.  *Id.* (emphasis in original).  The notice also included a nonexhaustive checklist of 37 items containing Choice's trademarks that needed to be removed.  Docket Entry No. 29-13 at 2.  Choice Hotels sent subsequent cease-and-desist letters on April 27, 2010 and May 23, 2011, which specifically addressed the use of the marks on the signs.  *See* Docket Entry Nos. 29-13 at 11; 29-14 at 10.

According to Mr. Patel and his premises manager, Mukesh Chandra, in or around April 2009, extensive efforts were made to remove the Comfort Inn name or marks from the subject hotel.  *See* Docket Entry Nos. 36-2 at 6; 36-3 at 4.  They testified that they removed and destroyed the Comfort-marked lobby displays, owner's plaque, stationery, shower curtains, fire evacuation cards, soap and amenity packages, in-room organizers, cups and glasses, ice buckets, guest service directories, phone plates and info caddies, waste baskets, sanitary bags, and

sanitary toilet strips.  Docket Entry Nos. 36-3 at 4–5; 29-17 at 22–23.  They also testified to painting over the "guest room door signage," changing the way they answered the phones, and not renewing the yellow pages advertisements.  Docket Entry Nos. 36-3 at 4–5; 36-2 at 6.  And, in May 2009, Mr. Patel filed new assumed name documents with the Victoria County Clerk's office, changing the hotel's name to "Crossroads Inn" or "Cameron Inn."  Docket Entry No. 36-2 at 6, 58–59.

On the other hand, Mr. Patel admits that he did not initially remove or paint over exterior Comfort Inn signs—including a 30-foot street sign and smaller entrance and exit signs—allegedly because he planned to use them at a new Comfort Inn to be built elsewhere in Victoria pursuant to a separate franchise agreement.  Docket Entry No. 36 at 5.  Mr. Patel purportedly hired someone to cover the signs with tarps sometime before June 29, 2009, but as photographs provided by Choice Hotels show, the tarps sagged off, or flew off entirely, from the signs on numerous occasions.  *See* Docket Entry Nos. 36-5 at 3–5; 29-20 at 7–9.  A May 2011 e-mail from a different Choice franchisee states that the poorly secured tarp would come down every few weeks causing the main sign to be visible for weeks or months thereafter, and that the entrance and exit signs never had any covering.  Docket Entry No. 29-14 at 5.[1]  Eventually, sometime on or

---

[1] Plaintiffs object to the James F. Downy, III affidavit and its attached exhibits—which include the May 2011 e-mail—on authentication grounds because the affidavit was not signed.  Docket Entry No. 37 at 4–5.  The Court overrules this objection with respect to the cited exhibit, because

around November 11, 2011, Mr. Patel had the exterior signs painted black.  *See*

Docket Entry No. 42-2 at 15.



Figure 2: Photographs of exposed signage at the subject property.  The daytime photographs were taken on or about August 23, 2010; the nighttime photograph of the exit sign was taken on or about October 16, 2011.  Docket Entry Nos. 29-3 ¶ 6; 29-13 at 14; 29-14 at 2–3; 5 at 11; 5-3 at 22.

In addition to the signs, the Comfort marks continued to be used in at least

two other ways after the termination of the franchise agreement.  Namely, the

hotel's credit card receipts still bore the Comfort Inn name and the hotel's wireless

service directed users to a website that displayed a "Welcome to the Comfort Inn"

greeting.  According to Mr. Patel, after his deposition he corrected the credit card

receipt situation on or around February 15, 2013, and the Wi-Fi situation on or

around March 6, 2013.  *See* Docket Entry Nos. 49 at 4; 36-2 at 6–7; 49-1.

Choice Hotels also presents evidence that consumers mistook the hotel for a

---

the signed Stuart M. Kreindler affidavit authenticated the e-mail.  Docket Entry No. 29-1 ¶ 12.

Comfort Inn after the franchise agreement had ended.  For instance, a guest who stayed at the hotel in July 2009 logged a complaint "regarding my stay at Comfort Inn," implying that the "dirt," "grime," and "insects" in his room ran counter to the "company advertisements about clean rooms."  Docket Entry No. 29-13 at 6–7. Another guest complained in March 2010 that he was not able to earn Choice's guest rewards points after staying at the hotel for 18 nights.  *Id.* at 9.[2]

While there is no evidence showing that the Patels continue to use Comfort marks, Choice Hotels requests a permanent injunction to prevent any further harm and monetary damages to compensate its brand's damaged goodwill.

## II.   SUMMARY JUDGMENT STANDARD

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions

---

[2] Plaintiffs object to Choice Hotels' consumer-complaint exhibits on hearsay grounds.  *See* Docket Entry No. 37 at 4.  The Court overrules the objection to the extent the evidence shows consumer confusion, but sustains the objection in so far as Choice Hotels seeks to establish the truth of the underlying statements.  The mere fact that complaints were submitted to Choice Hotels concerning the Victoria property supports the confusion point without a need to establish the truth of the complaint—that the customers had a bad experience.  The Court also notes that while the log of complaints may satisfy the hearsay exception for business records, the underlying statements constitute hearsay within hearsay.  *See Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (citations omitted).

of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.  LIABILITY

Choice Hotels seeks rulings of joint and several liability on all four causes of action it brings against the Patels: trademark infringement under the Lanham Act (15 U.S.C. § 1114); false designation of origin under the Lanham Act (15 U.S.C. § 1125); trademark infringement under Texas common law; and unfair competition under Texas common law.  Docket Entry No. 29 at 13.  Nevertheless, the Court must only conduct one inquiry to determine the Patels' liability because, as the parties appear to agree, the facts that support an action for trademark infringement under the Lanham Act also support the other three actions.  *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) ("The elements of trademark infringement and false designation of origin are identical, and the same evidence will establish both claims." (citations omitted)); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009) ("A determination of a likelihood of confusion under federal law is sufficient to prove trademark infringement under Texas law." (citing *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998)); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App.—Austin 2001, pet. denied) ("A trademark infringement and unfair

competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ)).

### A.  Infringement of the Comfort Marks

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citations omitted).  A cause of action for infringement exists where a person "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id.* (alterations in original) (quoting *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009–10 (5th Cir. 1975)).  Because Choice Hotels must establish liability for each Defendant individually, *see infra* pages 14–15, the Court first analyzes the grounds for liability against Mr. Patel with a subsequent analysis of Mrs. Patel's conduct.

### 1.  Ownership of Trademark

Choice Hotels must first establish ownership of a legally protected mark.

Proof of registration of a service mark or trademark with the United States Patent and Trademark Office is prima facie evidence of the registrant's exclusive right to use the mark in commerce for the services specified in the registration. *Elvis Presley Enters.*, 141 F.3d at 194 (citing 15 U.S.C. § 1115(a)); *see also Coach Inc. v. Sassy Couture*, No. SA-10-CV-601-XR, 2012 WL 162366, at *4 (W.D. Tex. Jan. 19, 2012) ("Except in certain limited circumstances, ownership of a protectable mark is proven where a mark is federally registered and has become 'incontestable' under §§ 1058 and 1065." (citation omitted)).

Choice Hotels has produced uncontested evidence that the marks at issue are registered. Docket Entry Nos. 5-1, 5-2. And the Patels have admitted that Choice Hotels owns the marks. Docket Entry No. 15 at 10. As such, there are no material facts in dispute regarding Choice Hotels' legally protected ownership of the marks at issue.

### 2. *Use of the Marks*

Next, Choice Hotels must prove that the Patels used the marks in commerce without Choice's consent. "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade . . . ." 15 U.S.C. § 1127. A mark is deemed to be used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.*

The undisputed evidence demonstrates that Mr. Patel used the registered

marks in commerce after Choice Hotels explicitly withdrew its consent for him to do so.  The photographs show, and Mr. Patel concedes, that the exact marks were displayed on the hotel's exterior signage, credit card receipts, and the Wi-Fi connection well after the franchise agreement terminated.  Defendants argue that Mr. Patel did not wish or intend to use the marks, but the use element does not depend on intent.  *See id.*; *see also Coach, Inc.*, 2012 WL 162366, at *4 (finding use independent of the defendants' intent).  Defendants also argue that the display of the marks on the credit card receipts and Wi-Fi website did not constitute use because they were not visible until guests had already decided to stay at the hotel. But issuing credit card receipts and providing a Wi-Fi connection are nonetheless part of the hotel's "sale of . . . services."  15 U.S.C. § 1127.  In sum, there is no issue of fact regarding whether Mr. Patel used the marks in commerce without Choice's consent.  Mrs. Patel's use of the marks is a different story and will be addressed below.

### 3.  Likelihood of Confusion

Finally, Choice Hotels must prove that the use of the trademarks was likely to cause confusion.  "Confusion" under the Lanham Act encompasses activity that is likely "to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

15 U.S.C. § 1125(a).  The Fifth Circuit uses the following factors, none of which is dispositive, to determine whether a likelihood of confusion exists: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."  *Am. Rice*, 518 F.3d at 329 (citations and internal quotation marks omitted).

When a defendant uses a plaintiff's exact marks, as occurred in this case, courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary, and a presumption of confusion exists.  *See Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 310–11 (5th Cir. 2008) (noting that marks which are similar, rather than the same, require a greater confusion analysis); *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 767, 767 (N.D. Tex. 2009) (concluding that likelihood of confusion is "evident" when a defendant used a plaintiff's exact marks).    Nonetheless, for the sake of completeness, the Court will apply the digits of confusion test, which demonstrates that there is no factual dispute regarding a likelihood of confusion in this case.

The first factor—the strength of plaintiff's mark—supports finding a likelihood of confusion.    As noted above, Choice's trademarks have been registered with the United States Patent and Trademark Office.  Moreover, Choice

Hotels alleges, and Mr. Patel concedes, that the "marks are well known – both nationwide and internationally – to represent high value, mid-priced hotel and motel services."  Docket Entry No. 29 at 17.  Accordingly, the undisputed facts regarding this factor heavily favor Choice Hotels.

The second factor—the similarity of the marks—also strongly favors finding a likelihood of confusion given that the subject hotel displayed Choice's exact marks.  *See* Figure 2, *supra*.

The third and fourth factors—the similarity of the products and the identity of retailers and purchasers—also favor a finding of likely confusion because the Patels and Choice Hotels are both providers of roadside, value lodging.  The fact that the Patels' hotel was formerly a Comfort Inn only heightens the likelihood for confusion.

The fifth factor—the similarity of advertising media used—does not heavily weigh in the Court's calculus, as neither party has presented evidence sufficient to compare the parties' overall advertising approaches.

The sixth factor—the intent of defendants—does not decisively favor either party.  The Fifth Circuit has noted that "if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity."  *Am. Rice*, 518 F.3d at 332 (citation and internal quotation marks omitted).  As discussed below, a

fact issue remains as to Mr. Patel's intent in using the Comfort marks after the termination of the franchise agreement.   On one hand, Mr. Patel undertook extensive efforts to remove Comfort Inn's name from his hotel by, among other things, discarding all of the Choice items in the hotel rooms, registering a new name for the hotel, and discontinuing the yellow page advertisements. Additionally, the Patels argue that they kept the signs not to benefit off the Comfort name, but to save them for a new franchise.  On the other hand, Mr. Patel took years to completely remove the Comfort name from his exterior signage, receipts, and Wi-Fi website, despite numerous cease-and-desist letters from Choice Hotels.  In any event, "[p]roof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement."  *Id.* (citation and internal quotation marks omitted).  Mr. Patel's possible lack of intent does not overwhelm the other factors.

The seventh factor—actual confusion—again favors Choice Hotels.   As described above, Choice Hotels has presented evidence, albeit limited, in the form of customer complaints[3] showing that real guests who stayed at the Patels' hotel after April 8, 2009, believed they were staying at a Comfort Inn.  Such evidence "may be the best evidence of a likelihood of confusion."  *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th

---

[3] *See supra* note 2 regarding the admissibility of the consumer complaints.

Cir. 2008).

Neither party has provided evidence regarding the final factor—the degree of care of potential purchasers—and the Court accordingly finds it to be inapplicable to the present facts.

In sum, the record does not contain any evidence that creates a genuine issue of material facts regarding the likelihood of confusion.  Putting aside the intent factor, the remaining factors heavily support a finding that Mr. Patel's use of the Comfort marks created a likelihood of confusion.  Because there is no genuine dispute that Mr. Patel used Choice Hotels' legally protected marks in commerce without Choice's consent and that such use was likely to cause confusion, summary judgment establishing Mr. Patel's liability under the four causes of action is warranted.

## B.  Mrs. Patel's Liability

Mrs. Patel's involvement in infringing Choice Hotel's trademark is less clear.  The Fifth Circuit allows for trademark infringement actions against both individuals and corporations.  *See Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968).  With respect to actions against individuals, like this one, a trademark "is infringed when an individual performs the act or does the things that the patent or trademark law protects against."  *Id.*  Thus, "[a]n individual can be held personally liable if he 'actively and knowingly caused the

infringement.'" *Taylor Made Golf Co. v. MJT Consulting Grp., LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

The Court finds that a fact issue remains concerning whether Mrs. Patel "actively and knowingly caused the infringement." *Id.* The Patels' admission that they "are engaged in the rendering of hotel/motel services at [the subject property]," Docket Entry No. 15 at 1, does not necessarily mean that Mrs. Patel participates onsite or that she is involved in the hotel's use of marks. Undermining the broad inference Choice Hotels draws from that admission is Mrs. Patel's deposition testimony that she abandoned the day-to-day operations and "left everything" concerning the hotel in 2004 to take care of her grandson. Docket Entry No. 49-2 at 3. Also relevant is the premises manager's testimony that he did not see Mrs. Patel at the property since April 2009, as opposed to seeing Mr. Patel every day. Docket Entry No. 36-3 at 3.

Given this evidence, a reasonable jury could find that Mrs. Patel is not liable for trademark infringement or the related causes of action. Summary judgment is not appropriate against Mrs. Patel.

## IV.   REMEDIES

Choice Hotels also seeks summary judgment rulings granting (1) injunctive relief; (2) an award of monetary damages in the form of the Patels' profits and

reasonable royalties; and (3) a trebling of damages.  For the reasons below, the Court grants a permanent injunction, but finds that certain questions of fact preclude a judgment on monetary damages at this point.

### A.  Permanent Injunction

A plaintiff seeking a permanent injunction must satisfy a four-factor test, demonstrating: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (so holding in the context of patent law (citations omitted)).  The decision to grant or deny a permanent injunction is grounded in principles of equity and is in the discretion of the district court.  *Id.*; 15 U.S.C. § 1116(a).

The evidence in this case supports entry of a permanent injunction.  Choice Hotels has established that it suffered an irreparable injury.  "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services."  *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (citations

omitted).   A hotel franchisor, such as Choice Hotels, is particularly susceptible to irreparable injury when its trademark is infringed.   As another district court within this Circuit has explained:

> The necessity of preventing such confusion is particularly pressing in the context of a motel chain because guests may only stay at a particular franchise once.   A bad experience at one location of what is supposed to be a relatively uniform chain may influence the customer to view the entire franchise poorly.   A motel that is no longer a franchisee has little incentive to promote the value of the franchise as a whole, but its unregulated conduct under the franchise's trademark and service mark can significantly impact the customer good will associated with those marks.

*Ramada Franchise Sys., Inc. v. Jacobcart, Inc.*, No. 3:01CV0306D, 2001 WL 540213, at *3 (N.D. Tex. May 17, 2001) (granting preliminary injunction).   Here, Choice Hotels' loss of control over its Comfort brand is not only hypothetical, but has been shown to exist through customer complaints.   Accordingly, Choice Hotels has met its burden of demonstrating irreparable injury.

Choice's loss of control also demonstrates that money damages cannot adequately compensate for the unauthorized use of the marks.   *See S & H Indus., Inc. v. Selander*, -- F. Supp. 2d --, No. 3:11-CV-2988-M-BH, 2013 WL 1131077, at *8 (N.D. Tex. Mar. 19, 2013) (citations omitted).   Because Choice's goodwill and reputation cannot be easily quantified, there is no adequate monetary remedy. *See Coach Inc.*, 2012 WL 162366, at *12 (citation omitted); *see also Pro Hardware, Inc. v. Home Ctrs. Of Am., Inc.*, 607 F. Supp. 146, 154 (S.D. Tex. 1984)

(noting the difficulty of calculating compensatory damages).

With respect to the third factor, a balance of the hardships between Choice Hotels and Mr. Patel favors equitable relief. The hardship Mr. Patel would face with the entry of a permanent injunction—namely, complying with state and federal law—pales in comparison with the irreparable harm that Choice Hotels would face if Mr. Patel once again began displaying the Comfort marks at the subject property. *See Coach, Inc.*, 2012 WL 162366, at *12.

Finally, a permanent injunction would serve the public interest by protecting consumers from deception or confusion. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) ("Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest."). Moreover, "the entry of an injunction comports with the public interest because it advances the purposes of the Lanham Act." *S & H Indus.*, 2013 WL 1131077, at *9; *see also Quantum Fitness Corp.*, 83 F. Supp. 2d at 832 ("The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks (citations omitted)); *Ramada Franchise Sys.*, 2001 WL 540213, at *3 (noting that the public interest "promotes the protection of valuable trademarks and service marks in a capital-based economy that rewards success through competition").

The Court accordingly finds that principles of equity require injunctive relief

for Choice Hotels.[4]

### B.  Monetary Damages

Upon a finding of trademark infringement, section 1117 of the Lanham Act entitles a plaintiff, subject to principles of equity, to recover: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  But because the goal of the statute is to achieve equity between the parties, its application requires a case-by-case evaluation "to determine the nature of the infringing conduct and its adverse effects, if any, on the plaintiff."  *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). In this light, the statute provides:

> If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

15 U.S.C. § 1117(a).  Section 1117 also notes that the monetary damages shall constitute "compensation and not a penalty," and that reasonable attorney fees may be available in "exceptional cases."  *Id.*  Though the district court has discretion in determining an equitable damages award, genuine disputes concerning material facts, such as the actual amount of damages or the willfulness of infringement, may still preclude a summary judgment award of damages.  *See Leatherwood v. Def.*

---

[4] Given the Court's ruling, Plaintiff's application for a temporary restraining order (Docket Entry No. 38) is **DENIED** as moot.

*Procurement Mfg. Servs. Inc.*, No. 403-CV-313-Y, 2004 WL 691218, at *7 (N.D. Tex. Mar. 16, 2004) ("Because the Court concludes that there are still genuine issues of fact relating to plaintiff's claims, the Court will not determine at this time whether and to what extent [plaintiff] is entitled to monetary damages.").

   *1. Accounting of Profits*

   The first monetary remedy that Choice Hotels seeks judgment for is profits during the period of infringement, which Choice calculates to be $674,207.44. Docket Entry No. 29 at 25.

   Such an award of profits is "not automatic." *Seatrax*, 200 F.3d at 369 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998), *abrogated on other grounds*, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)).  The Fifth Circuit has identified the following nonexhaustive factors to determine when a plaintiff is entitled to an accounting of the defendant's profits: "(1) whether the defendant intended to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting her rights; (5) the public interest in making the conduct unprofitable, and (6) whether it is a case of palming off." *Id.* (citations omitted). If an award of profits is found to be appropriate, the plaintiff is only entitled to those profits attributable to the unlawful use of the mark; but, the burden is on the defendant to show that he made no profit from the infringing use of the mark.

*Pebble Beach*, 155 F.3d at 554–55 (citations omitted).

Here, genuine disputes of material facts preclude a ruling of summary judgment for the hotel's profits.  The first factor—intent to confuse or deceive— though not dispositive, "is an important factor which must be considered when determining whether an accounting of profits is appropriate."  *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002); *see also Seatrax*, 200 F.3d at 372 n.9 (noting absence of cases within the Fifth Circuit where an accounting of profits has been awarded without a finding of willfulness); *Ironclad, L.P. v. Poly-America, Inc.*, No. 3:98-CV-2600P, 1999 WL 826946, at *8 (N.D. Tex. Oct. 14, 1999) (noting that the "availability of both monetary damages and attorney's fees hinge on determining the egregiousness and willfulness of a defendant infringer's action" and denying summary judgment for those remedies because questions of fact remained).

A reasonable jury could find that the Mr. Patel did not intend to confuse or deceive his clientele.  As described above, Mr. Patel undertook extensive efforts to remove the Comfort name from the hotel.  Such efforts distinguish Mr. Patel from the defendants recently ordered to disgorge profits in *Choice Hotels International, Inc. v. Bhakta*, No. 2:11-cv-00411, 2013 WL 1403526 (S.D. Tex. Apr. 5, 2013), who appear to have continued operating their hotel as a Choice Hotel franchise

after the termination of the franchise agreement.[5]   The *Bhakta* opinion makes no mention that the defendants removed any of Choice's marks or even abandoned using Choice's brand name.  *Id.*

Additionally, the mere inclusion of the Comfort name on credit card receipts and the Wi-Fi connection website is not the type of willful and egregious conduct for which courts within this circuit have previously awarded profits.  *See, e.g.*, *Interstate Battery Sys. of Am., Inc. v. Wright*, 811 F. Supp. 237, 243, 246 (N.D. Tex. 1993) (finding intent and awarding profits where defendants' employees were placing plaintiff's labels on batteries that they clearly knew were not plaintiffs' batteries); *see also Coach, Inc.*, 2012 WL 162366, at *10 (finding willful intent when defendants bought items far below market value and sold them after being informed that the items ordered from China were counterfeit and similar items were seized by U.S. Customs for being counterfeit).   Moreover, because all reasonable doubts on questions of fact must be resolved in favor of the nonmoving party, the Court will consider the delay in removing the exterior signage to be due to Mr. Patel's plans to franchise a new Choice Hotel located elsewhere in Victoria (Defendant's characterization), rather than "dilatory, self-serving efforts" (Plaintiff's characterization).  *Compare* Docket Entry No. 36-2 at 5–7, *with* Docket

---

[5] Choice Hotels moved for this Court to take judicial notice of the adjudicative facts in the *Bhakta* matter.  Docket Entry No. 51.  As is clear from the discussion above, the Court grants that request, as well as the similar requests for judicial notice in Docket Entry Nos. 44 and 46.

Entry No. 42 at 10.[6]

As to the second factor, questions remain about whether Choice Hotels'
sales have been diverted.  While Choice Hotels has presented evidence of customer
complaints, suggesting that a handful of customers may not return to a Comfort
Inn, it has failed to present evidence or explain how its sales were diverted to the
Patels.[7]  Choice has not presented evidence that one of its competing hotels existed
in Victoria that guests could have stayed at instead of the subject property.
Furthermore, questions still remain about how much of the Patels' income was
attributable to using the Comfort Inn trademarks, as opposed to the Eagle Ford
shale-induced economic boom in Victoria or a host of other factors.  Mr. Patel
contends that the hotel's profits were not attributable to the Comfort Inn name or
affiliation given that its clientele is derived more from oilfield and construction
companies who rent out blocks of rooms, than from transient tourists who pick a
hotel by its outdoor sign.[8]  Choice Hotels has not proven at this stage of the
litigation that an award of $674,207.44 in profits is consistent with the principles of

---

[6] While Choice Hotels lodges evidentiary objections to certain testimony that Mr. Patel provided
about the potential new franchise, it does not object to the general statement that Mr. Patel
intended to franchise another Choice Hotel.  *See* Docket Entry No. 48 at 7–11.  In any event,
such a statement is admissible as it represents Mr. Patel's personal motivation for his actions.

[7] *See supra* note 2 regarding the admissibility of consumer complaints.  Regardless of the
admissibility issues, there is no evidence of diversion.

[8] Choice Hotels objects to testimony provided by Mr. Patel—which attributes the hotel's
profitability to the improved economy driven by the increase in oil and gas production in the
area—based on Federal Rules of Evidence 701, 702, 801, 802, and 1002.  Docket Entry No. 48
at 4–5.  The Court overrules the objections for the primary reason that the statements are based
on Mr. Patel's personal knowledge.

equity upon which the Lanham Act damages regime is based and the Act's explicit directive that a markholder only be entitled to those profits attributable to the unlawful use of the mark.  *See* 15 U.S.C. § 1117(a).[9]

With respect to the third factor, the adequacy of other remedies, the Court notes that a permanent injunction should be able to prevent any future instances of infringement.  *See Pebble Beach*, 155 F.3d at 555 ("Considering the lack of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities in this case." (citations omitted)).  Though the injunction may not cure any damage that Choice Hotels' reputation has suffered, appropriate monetary damages may be determined and awarded after factual issues are resolved.

The Court finds that the fourth and fifth factors—plaintiff's delay in asserting its rights and the public interest in making the misconduct unprofitable— favor Choice Hotels' request for an accounting of profits.  But because there is no evidence of "palming off," the sixth factor, like the first three, weighs against such relief.

In sum, the evidence in this case does not support a summary judgment ruling awarding Choice Hotels the Patels' profits.

---

[9] Additionally, it is unlikely that any of the Patel's profit would be attributable to Choice's marks after the signs were painted over in November 2011.  Though the credit card receipts and Wi-Fi connection website may have given guests the impression that they stayed at a Comfort Inn and driven away future business for Choice Hotels, the receipts and website, which would only be seen once a guest had registered, would not have caused a guest to stay at the subject property and boost the Patels' profits.

### 2. Reasonable Royalties

In addition to an accounting of profits, Choice Hotels also seeks a summary judgment ruling awarding it royalties for the period during which Mr. Patel continued to use the Comfort marks.  Such royalties amount to $156,481.39. Docket Entry No. 29 at 26.

"Usually, when the courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license ended and damages were measured by the royalty rate the parties had agreed on."  5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:85 (4th ed. 2013).  For instance, in *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, the court supported issuing an award of royalty damages when the defendant sold embroidered emblems of NHL insignias without obtaining a license from plaintiffs.  597 F.2d 71, 75–76 (5th Cir. 1979). The Federal Circuit has construed *Boston Professional Hockey Association* to "stand[] for the proposition that any royalty-based measure of damages must exhibit a strictly rational correlation between the rights appropriated and the measure of damages applied."  *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 920 (Fed. Cir. 1984).  Thus, in *Bandag*, the court found a full royalties award to be inappropriate where the infringer had only used the mark for a single advertisement in the telephone book.  *Id.*  Similarly, in the hotel context, at least

one court within this circuit has reduced damages based on a percentage of royalties, when the infringement was only partially accountable for the defendant's business. *See Holiday Inns, Inc. v. Airport Holiday Corp.*, 493 F. Supp. 1025, 1028 (N.D. Tex. 1980) ("Seventy per cent of room sales were due to [the general manager's] efforts and only thirty per cent due to potential patrons of Plaintiff's licenses seeing Defendants' motel with the infringing and unfair use of Plaintiff's marks.   Therefore Plaintiff's damages are thirty per cent of [the calculated royalties].").

At this stage of the litigation, Choice Hotels has not presented sufficient evidence for the Court to issue an award of royalties.  Specifically, Choice Hotels has failed to present evidence calculating the purported damage to its goodwill[10] or the Patels' unjust enrichment from unlawfully using the Comfort marks. Accordingly, summary judgment for royalty damages is inappropriate.

### C.  Treble Damages

Lastly, Choice Hotels seeks summary judgment for treble damages.  Section 1117(b) of the Lanham Act instructs courts to treble damages or profits if the violation consists of intentionally using a mark or designation with the knowledge that the mark is counterfeit, unless the court finds extenuating circumstances.  15

---

[10] Moreover, Fifth Circuit precedent suggests that royalty damages may not be an appropriate proxy for lost good will.  *See Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 372 (5th Cir. 2004) (rejecting royalties award as a proxy for lost goodwill in contract action).

U.S.C. § 1117(b)(1).

Nonetheless, the Court refuses to award treble damages at this time for two reasons.  First, as explained above, a fact issue exists concerning whether Mr. Patel wrongfully intended to infringe Choice Hotels' trademarks.  *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (refusing to apply section 1117(b) where jury found that defendants did not wrongfully intend to infringe plaintiff's trademarks or engage in unfair competition); *Oyster Software, Inc. v. Forms Processing, Inc.*, No. C-00-0724 JCS, 2001 WL 1736382, at *10 (N.D. Cal. Dec. 6, 2001) (denying summary judgment regarding treble damages and costs because issues of fact remained as to willfulness).  Second, similar fact issues also prevent the Court from determining at this point whether extenuating circumstances exist such that equitable principles would disfavor a trebling of damages.  *See Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 820 (5th Cir. 1998) (noting that awards under section 1117 "are never automatic and may be limited by equitable considerations" (citation and internal quotation marks omitted)).[11]

---

[11] Given the Court's ruling on treble damages, it need not address the issue of whether the marks here are not "counterfeit" and thus outside the reach of section 1117(b).  *See Am. Registry of Radiologic Technologists v. Garza*, 512 F. Supp. 2d 902, 912 (S.D. Tex. 2007) (departing from decisions of other circuits in holding that the "obvious meaning of 15 U.S.C. § 1114(1)(a) does not include the affixation of someone else's genuine trademark on one's own goods or the promotion of one's own services through the use of another's genuine trademark").

## V.   CONCLUSION[12]

For the foregoing reasons, Plaintiff Choice Hotels International, Inc.'s Motion for Summary Judgment or, Alternatively, for Partial Summary Judgment (Docket Entry No. 29) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court finds that:

- There is no genuine issue of material fact with respect to Choice Hotels' claim that Mr. Vinodbhai Patel is liable for trademark infringement under the Lanham Act (15 U.S.C. § 1114); false designation of origin under the Lanham Act (15 U.S.C. § 1125); trademark infringement under Texas common law; and unfair competition under Texas common law.

- Genuine issues of material fact remain with respect to Choice Hotels' claim that Mrs. Ilaben Patel is liable for those causes of action.

- Choice Hotels has satisfied all four requirements for the issuance of a permanent injunction as to Mr. Patel.  The Court will file a permanent injunction by separate order.

- Genuine issues of material fact remain with respect to Choice Hotels' requests for an accounting of profits, reasonable royalty damages, and treble damages.


**SIGNED** this 16th day of April, 2013.

_____

Gregg Costa
United States District Judge

---

[12] The Court also **DENIES** Defendants' motion to strike Plaintiff's summary judgment evidence (Docket Entry No. 37) and Plaintiff's amended motion to strike Defendants' summary judgment evidence (Docket Entry No. 48).  To the extent any of the objections not addressed above had merit, the Court did not rely on the corresponding evidence in reaching its decisions.

28 / 28